United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Thank you. Be seated. We have an admission this morning. Mr. Nelson, will you come forward? It's my great pleasure to move the admission of Michael Eric Nelson, who is a member of the bar and in good standing with the highest courts of Virginia and the District of Columbia. I have knowledge of his credentials. I'm satisfied that he possesses the necessary qualifications. Mr. Nelson has been my law clerk for a while, has performed admirably in that role. So it is my great pleasure to move his admission to the bar of this court. And I invite Judge Wallach to ascertain if the vote of the panel. Judge Clevenger, I'll vote you. With great pleasure. I'm affirmatively on the motion. And I will at least concur. So the motion carries. The motion is granted. Will you approach the bailiff who will administer the oath? Please raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counsel of this court, uprightly and according to law, that you will support the constitution of the United States of America? I do. Welcome to the bar of the United States of America. Thank you very much. Thank you. Welcome, Mike, to the bar of the court. Indeed, welcome. We shall proceed with the first argued case this morning, number 16, 1954, In re Knowles Electronics, LLC. Mr. Rainey. Good morning, your honors, and may it please the court. I'm Richard Rainey on behalf of Appellant Knowles. Your honors, we submit that the board reversibly erred in affirming the examiner's anticipation and obviousness rejections in this case. As to anticipation, our position is the board erred in either not engaging on the critical issue with respect to the claim term package, that is, does a package require a mounting mechanism concluding, in a way we believe, to find that the prior art met the claim limitation package, even though we would submit it's undisputed. It does not have any form of a mounting mechanism, certainly as contemplated by this invention. As to obviousness, we would submit the board erred by substituting a mode of operation rationale for combining references that was nowhere found. Where does the patent disclose the type of interconnection used to electrically connect the package to an external circuit? So the patent discloses two types of mounting mechanisms which perform the two functions. They mechanically hold the device in place, fix it, and they also electrically connect it to the next level. In the background of the invention, the patent specifically talks about through-hole approach, a dip for example, and talks about those being more difficult to manufacture. In the embodiments, figures four and five in particular, which show the finished product, show solder pads. One embodiment shows solder pads only on the bottom, which at the time of the invention was a well-known solder mount, surface mount package. The other embodiment shows solder pads on the top and on the bottom, which was also at the time of the invention a well-known approach to a surface mount mounting mechanism for a package. In addition, on this issue of package, this court actually addressed the same claim term in the MEMSTEC decision. We think this is a somewhat unique situation because not only has the Federal Circuit spoken on what a package means in related patents, but it's also cited on the face of this particular patent. So MEMSTEC is not only a persuasive decision by this court, it's actually intrinsic evidence. We would argue kind of like a super definition of what the term means. And in MEMSTEC, what we think is significant and why we think it relates so significantly to BRI, we recognize the standards are different. MEMSTEC construed package to require protection from the environment and first and second level interconnects. That's correct, but the court also went on to say… Neither construction required that the package be connected to a printed circuit board. I'm sorry? Neither construction required that the package be connected to a printed circuit board. And we've not taken the position that a printed circuit board per se is required. I will say that as a practical matter, that's how these devices are connected to the next level. They typically go on to a PCB, but you're right, and we cited MEMSTEC for that very proposition or the like, it says, this court said. But the court also went on to make clear that a mountable package was an important characteristic of Mr. Minervini's and wrong for the board to say a BRI can ignore what this court has said is an important characteristic of an invention. So that goes to this issue of why we think having the components come together in a way that securely mounts them to the next level as well as electrically connecting them is so critical. In addition, we cited numerous extrinsic sources which are fully inconsistent with the intrinsic two types of mounting mechanisms. All of those extrinsic sources, consistent with our understanding of what a package meant at or around the time of the invention, they talk about two ways of mounting a package, surface mount and through-hole. There's nothing in those references that's in any way inconsistent with that, and the board's grasping on the phrase in general we think was wrong, particularly in light of the intrinsic evidence and in light of this court's MEMSTEC decision. And then when you look at Haltern itself, it seems apparent to us, and I think as a matter of law you can conclude, it has no mounting mechanism. Haltern is a very different kind of thing. It's an assembly which has a flexible material that is between the contact pads, which is where Haltern connects electronically to other things, and the part of Haltern where the microphone is placed. And in fact, to suggest that it's mounted, it seemed to me the best analogy I could come up with is if you were interested in, you know, if you bought a new flat-screen TV and you hired an installer and you said to the installer, I'd like you to mount my flat-screen TV on my wall in my family room, and you came home and the installer had plugged it in and simply sat the TV against the wall and plugged it in, you would be very upset because your TV is not mounted on the wall simply because it's plugged in at the end of a flexible wire. Mounting of a TV requires a bracket to hold that TV in place up on the wall, so you don't have a mountable structure simply because you can into the wall. So we would submit that Haltern has no mounting mechanism. Nowhere did the board ever explain where a mounting mechanism is in Haltern, and we would submit to you, frankly, the board's analysis on this is wholly inadequate. I think even as a matter of, you know, I was thinking if this court were to have the correctness or incorrectness of some invalidity contentions before it, nowhere does the board say here is the element in Haltern that we say satisfies this claim limitation. They simply say Haltern, our approach to package is broad enough to encompass Haltern. Well, why? There were some critical disputes before the board, and we would urge the court that the failure to engage on those at the very least requires vacature. Let me just turn to the issue of obviousness. It seems apparent if you look at the examiner's approach to obviousness in this case, the examiner simply concluded that it would have been obvious to substitute the MEMS microphone of Haltern for the ECM microphone in UNE, if I'm pronouncing that correctly. This is an interesting conclusion in and of itself, given that as the national science papers, all the evidence we've pointed the court to in the briefing and pointed the board to below shows packaging a MEMS microphone at or around this time was a major problem, a serious issue. So the examiner, rather than giving any explanation, just simply concluded it would have been obvious. On appeal for the first time, we now have the board substituting an analysis suggesting that the mode of operation of an ECM microphone is somehow similar to the mode of operation of a MEMS microphone. We would submit, we had never had an opportunity to respond to that below as a fundamental matter of this minimum that should be remanded for us to address. It is factually a completely inaccurate conclusion. Yes, they are both microphones, but that is about where the analogy ends. MEMS microphones are far more sophisticated in their operation than an ECM microphone, require additional circuitry and additional design considerations. And this, frankly, this new finding on appeal is exactly why this is such a prejudicial finding in our favor. We would ask that the court vacate the obviousness finding by the board and instruct the board to remand it for us to introduce evidence on that issue. Perhaps this is a question you're not prepared to answer, but what is your perception of why the result was different in the ITC and here? The only conclusion I can come to is that the board felt the BRI standard authorized it to basically ignore what this court had done in the MEMSTEC decision. And for whatever reason looked at the Halter in reference and said we think this meets the claims, although we're not going to really tell you why. That's the best explanation I have. I didn't see an answer either. That's why I asked you. If the court has no further questions, I'll reserve the remaining time I have for rebuttal. Thank you. Thank you. Okay. Ms. Silfen. Thank you. Please, the court. I would like to start with the claim construction issue. NOLS is advocating a construction. Ms. Silfen, who are you representing? The USPTO. So this is the tribunal has come in to defend its decision? That's right. Because the petitioner no longer is interested in the defense? That's right. On what basis does the tribunal take that position? The USPTO has under the statute the ability to intervene in these cases. That's a broad interpretation of the statute, is it not? For a tribunal to defend itself when the other side no longer cares if it wins or loses? This court has routinely allowed the USPTO to come in and defend the decisions of the board on appeal, and it would result in sort of a lopsided proceeding, I would think, if only one party were here. So you're not saying you're here in the public interest? You're here to defend the decision that's being appealed from? The tribunal is coming in to say you shouldn't reverse me? No, it's both. We believe it's in the public interest. On what basis are you representing the public interest? Representing the USPTO, which is here to represent the public interest. That's our job. That's the board's job as well. But we've held that entities representing the public interest, consumer watchdog, for instance, have no standing to come into court. That's true for non-governmental entities, yes, Your Honor. For the government, the analysis is different, I believe. And particularly when the statute discusses the ability of the USPTO to come and defend the decision of the board below. I'll proceed with your argument in any case. Thank you, Your Honor. On the claim construction issue, Knowles would like the term package to include not just housing and protection from external forces and first and second level interconnects, but that the package must be connected to a printed circuit board via one of two methods, surface mounting or through-hole mounting. Well, when I asked your opposing counsel, he said, no, it didn't have to be a printed circuit board. Well, I suppose that's not how I read their brief. There was not one single construction advocated. But the way I read their brief was that it has to be mounted via through-hole or surface mount. Perhaps it doesn't have to be to a printed circuit board. And we agree with that, that it does not have to be to a printed circuit board. But we also think that the... Something. What's that? It has to be mounted to something. Not necessarily. It's so the construction that the board was operating under, it could be, it has to connect to an external circuit in some way, yes. But it could do that through a socket or a connector or directly to another wire. Those are some examples that the expert discussed in this case and that the examiner discussed as well. But their position is it has to be mounted to something. That's true. That seems to be their position, yes. And as we explained in our brief, the claims, the specification, this court's decision in MEMS technology and the extrinsic evidence all support the construction that it need not be mounted to anything. It could be connected via some other method. So the claims to start with, the broadest claim here is claim one. And it claims a package. Claim 15 is a dependent claim, which is narrower. And it adds an additional element such as a solder pad or other things that make it mountable, still not necessarily through hole or surface mount, but mountable. And that is the narrower of the claims. And then if you look at the 089 patent, which is one of the ones that was at issue in the MEMS technology decision, that claims, even narrower, a surface mountable package. So looking at the claims as a whole, package does not require either of those additional limitations. So are you saying that this court was wrong in his claim construction in MEMS tech? Oh, no. No, Your Honor. This court's construction in MEMS technology was that one of ordinary skill in the art would know that a package is a self-contained unit that has two levels of connection to the device and to a circuit or other system. So it's the same invention. It is. Well, it's a related patent. Yes. Yes, for the same origin, the same specification. Yes. And so it said that it has to be to a circuit or other system. It does not say mounted, doesn't say to a printed circuit board. It doesn't say via through hole or surface mount. I'm trying to understand why the results should be different. The results should be the same, Your Honor. That claim construction of package is that it does not require a surface mount or through hole mount. The same claims that you can't distinguish in one case on the same claim construction have been held valid and affirmed by this court and now have been held invalid by another tribunal, which is not here to defend itself. Well, those claims in MEMS technology, some of them actually claimed surface mountable package. And so in that case, yes, surface mountable package must be mountable to a printed circuit board by a surface mount. But package standing alone does not have to be. So there are different claims here than were at issue in MEMS technology. And but the claim construction that we are talking about is the same one that this court was operating on in MEMS technology. And on top of that, the extrinsic evidence here also supports the claim construction. Dr. Peck, in his declaration, discussed the ability to connect packages at the time of the invention to sockets and connectors and directly to wire. That's at page 2903 of the Joint Appendix. And the examiner discussed that in his decision. And regardless, as we mentioned in our brief, Halteran, under any of these constructions, Halteran, nothing prevents someone from connecting Halteran to a printed circuit board. So Halteran is designed, as Mr. Rainey discussed, to connect to a connector. And certainly it can do that. But Dr. Tamala in the record here explained that Halteran could also be And so even under the construction that requires mounting to a printed circuit board via through-hole or surface mount, Halteran could still be surface mounted to a printed circuit board. If I may move on to the method claims quickly, the examiner and the board both determined that YUN or UNE, I don't know how to pronounce it, that the capacitor of UNE, that the capacitor microphone could be replaced with Halteran's silicon capacitor microphone. And that it was a simple substitution of known components. The principle on which these capacitor microphones operate was well known. It is the way capacitors operate, which is that the distance between two plates reflects a voltage. And if that distance changes by the pressure of sound, then the voltage will change. And so the board explained the same principle, which is that this was a simple substitution of a capacitor, a silicon capacitor microphone for the existing capacitor microphone in UNE. And the board added a little bit of discussion of that principle of the way a capacitor microphone works. But all of this was well known by the examiner as well as the board. And it was certainly not a new ground of rejection. If the court has no other questions. Let me ask you the same question I asked Mr. Rainey. How do you explain the different results of these two tribunals? I don't think there are different results, Your Honor. In one case, the claims are valid. In another, they're invalid. Right. And they're different claims. There are different claims in the two different tribunals. So the construction that we are talking about is the same as the ITC's construction and this court's construction in MEMS technology. The construction of the word package is the same. The result may be different because of the different claims at issue. But the claim term itself, as construed by all of the different tribunals, is the same. So the prior art that was found to be pertinent for a 102 analysis in this case was not pertinent in the other case because of the difference in the claims. I believe that's true. I don't know that for sure. Your Honor, I'd have to look back at the decision to know if this prior art was at issue. Okay. Any more questions? No questions. Thank you. Okay. Mr. Rainey. Briefly, Your Honors. The solicitor's concession that MEMS tech is actually controlling in this case, we think mandates reversal. I would urge the court to look at the claims in the 231 patent. Which does not have the phrase surface-mountable in the word package. It just has the phrase package. And in analyzing the claims of the 231 patent, this court said, the requirement, I'm quoting from Appendix 3174, the requirement that the components listed in the claim body, which I would argue are essentially the same components at issue here, it's the same essential claim, come together, the requirement that the components listed in the claim body come together to form a mountable package is thus an important characteristic of the claimed invention. Mountable package. That's exactly what this court held was the important characteristic of Mr. Minervini's invention. And this approach that we see, we saw it at the board, we're seeing it again here, of taking words out of context and arguing they're all the same is missing the point. We have advocated consistently that these claims require a mounting mechanism. Now, it is true that the two, we were aware of two types of mounting mechanisms, through-hole and surface-mount. But put those aside for a minute. If there's some other way of mounting it, fine. The issue though is there still has to be a mounting mechanism that does what those two mounting mechanisms do. Those are the only two disclosed in the intrinsic record and we would argue all of the extrinsic evidence is to that point. Another point the solicitor made that I thought was kind of interesting is arguing that nothing prevents halterin from being modified in some way to mount it. That is, this is an anticipation rejection. This is not an obviousness rejection. We're not arguing about modifying halterin. We're arguing about what halterin teaches. And what the board pointed to, what the examiner pointed to was the figure that we reproduced in the patent, which shows a flexible substrate with connectors at one end, not connected to anything, and a microphone in a housing on the other end. That is not a mountable package under any approach we would submit. If the court has no further questions, that's all I have. We would advocate for reversal. Thank you, Mr. Ranney. Thank you both. The case is taken under submission.